IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DONALD W. IRVING, et al.,

       Plaintiffs,              No. CIV S-12-290 KJM EFB

   v.

LENNAR CORPORATION, et al.,       ORDER

       Defendants.
_____/

       Defendants Lennar Corporation ("Lennar"), Lennar Renaissance, Inc., Lennar Sales Corporation., and Universal American Mortgage Company of California ("UAM") (collectively "defendants") have filed motions to dismiss and to change venue.  Plaintiffs have opposed the motions.  After considering the parties' arguments, the court hereby DENIES the motion to change venue and GRANTS in part and DENIES in part the motion to dismiss.

I.  BACKGROUND

       On February 27, 2012, plaintiffs Donald Irving, Fammie Holmes-Irving, Chandresh Bhakta, Tina Khakta, John Carreras, Isidro Escareno, Dennis Frantom, Dan Lewerenz, Rui Lopes, Rose Lopes, Alfredo Lorica, Eugenia Lorica, Dan Masciovecchio, Greg Peterson, Olga Peterson, E. Scott Coelho, Valerie Salazar, Themis Sakellarious, Jimmy Turner, Sharon Turner, Greg Weasel, Virginia Weitzel, Christopher White, Monique White, Thomas

Williams and Makeiba Scott (collectively "plaintiffs") filed a First Amended Complaint ("FAC"), alleging seven causes of action stemming from defendants' alleged acts and omissions in connection with the Estonia Estates and Legends in Rio Del Or communities, in the Plumas Lake Subdivision in Yuba County: (1) violation of the Interstate Land Sales Act ("ILSA") by means of untrue statements in the sale of subdivided lots, 15 U.S.C. § 1703; (2) unfair competition and business practices ("UCL"), CAL. BUS. & PROF. § 17200; (3) false and misleading advertising or statements in the sale of real property, CAL. BUS. & PROF. § 17500; (4) rescission based on fraud or mistake, CAL. CIV. CODE § 1689; (5) RICO violation, 18 U.S.C. §§ 1961, *et seq*., (6) Sherman Act and California anti-trust violations, 15 U.S.C. § 1 and CAL. BUS. & PROF. CODE § 16700, *et seq*.; (7) violation of the Covenants, Conditions and Restrictions ("CC&RS").

Plaintiffs allege that the Lennar defendants are in the business of developing, constructing and selling new homes; that they have expanded their business to include sales, lending, appraisals and insurance through related companies, all of which gave potential buyers easy access to financing, not otherwise available in the marketplace, in order to purchase defendants' homes. FAC ¶¶ 17, 19-20. Lennar set up Lennar Renaissance, Lennar Sales and other subsidiaries to develop, construct, advertise and sell the houses and UAM to finance the purchases, but these entities are separate in name only, as they are under Lennar's control. FAC ¶¶ 21-23, 27. Because Lennar controlled every aspect of the project, it was able to, and did, sell to people without determining whether they were qualified and indeed sold to unqualified buyers who posed an abnormally high risk of foreclosure. FAC ¶¶ 26, 27-28.

According to plaintiffs, beginning in 2004, Lennar directed the Lennar subsidiaries to increase the number of homes sold and profits per sale. FAC ¶ 25. By making money available to plaintiffs, the defendants induced plaintiffs and others to buy houses in the "artificially inflated, localized, relatively isolated, and therefore readily controlled marketplace in reliance on both the expressly made and implied representations that the appreciated home

2

values would continue to rise or–at a minimum–would remain stable, and would outperform competing markets elsewhere in the region . . . ." FAC ¶ 26. Plaintiffs paid "artificially inflated asking prices" for the houses, after a "Lennar-friendly" appraisal. FAC ¶¶ 26-27. In addition, many of the plaintiffs acceded to Lennar's "express or implied condition" that they use UAM to finance the purchases. FAC ¶ 27. By these means, Lennar perpetrated a scheme designed to entice home buyers even though it knew that the market values were the result of its manipulation. FAC ¶ 28.

Lennar sold houses to investors, knowing that the investors would not occupy the houses but instead would rent them, undermining the stable neighborhood the sales representatives had promised. FAC ¶ 30. As part of this scheme, defendants required early buyers to make a high down payment, suggested that subsequent buyers would have to meet the same requirement, and represented that they would sell only to people who intended to live in the houses for at least one year. FAC ¶¶ 32, 34. Lennar subsequently sold houses to unqualified buyers and investors, which resulted in a number of foreclosures and short-sales, which has depressed the price of plaintiffs' houses and destroyed their equity. FAC ¶ 33. Defendants were aware that many buyers were unqualified because defendants required all buyers to apply to UAM for financing, which gave them access to the financial status of each buyer, but even so they continued to represent that the houses they were selling were good investments. FAC ¶¶ 36-37, 42. The foreclosures and short sales stemming from the sales to unqualified buyers have had a negative impact on plaintiffs' creditworthiness and on the value of plaintiffs' property. FAC ¶¶ 33, 46. In fact, many houses are vacant, yards are unfinished, multiple families are living in single-family homes, renters live in other homes, and crime has increased. FAC ¶ 47. Plaintiffs are informed and believe the extent of Lennar's subprime financing in these developments resulted in a "saturation" of subprime buyers, a material fact that should have been disclosed. FAC ¶ 50. Lennar's failure to disclose misled plaintiffs into purchasing houses they would not have bought had there been adequate disclosure. FAC ¶¶ 50-51.

1    In addition to the representations about the wisdom of the investment, Lennar

2  promised plaintiffs that the subdivisions would be served adequately by public, private,

3  commercial and retail facilities.  FAC ¶ 54.  As the developments were in wholly undeveloped

4  areas unsupported by adequate services, this promise to build a fully developed community was

5  designed to entice plaintiffs into purchasing defendants' houses.  FAC ¶¶ 55-57.  Defendants

6  also promised expressly or implicitly to build all the houses planned and to build a park, among

7  other things.  FAC ¶ 60.  Defendants used misleading and false sales brochures, subdivision

8  maps, newspaper advertisements, sales contract terms, title documents, CC&RS and other such

9  techniques.  FAC ¶ 58.

10  II.  MOTION TO TRANSFER VENUE

11    Defendants contend that this case should be transferred to the Central District of

12  California because a similar case, *Stephens v. Lennar Corporation*, No. EDCV 09-1668 VAP

13  (DTBx), a putative class action, is pending before the Honorable Virginia A. Phillips and, as the

14  complaint in the instant case borrows many claims directly from the *Stephens* litigation,

15  transferring this case to the Central District will conserve judicial resources by ensuring that it is

16  assigned to a judge intimately familiar with the issues.

17    Plaintiffs argue that venue is appropriate in this district because they all live here

18  and the claims arose here.

19    Defendants have asked the court to take judicial notice of the Second Amended

20  Complaint in the *Stephens* case, an order issued by Judge Phillips on March 31, 2010, and an

21  order dismissing eight consolidated cases, including *Stephens*, issued March 26, 2012.

22  Defendants' Request for Judicial Notice, ECF No. 22, Exs. 50 (*Stephens* complaint), 51 (order of

23  March 31, 2010), and 52 (order dismissing consolidated cases, dated March 26, 2012).  As these

24  documents have some relevance to the pending motion, the court will take judicial notice of

25  them.  *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (stating that a court may

26  /////

1   judicially notice proceedings in other courts if those proceedings have a direct relation to the

2   matters at issue).

3          A court considering a motion to transfer venue must determine whether venue is

4   proper in this district; whether plaintiff could have brought the action in the transferee district;

5   and whether the transfer will promote convenience and fairness. *Stewart Org., Inc. v. Ricoh*

6   *Corp.*, 487 U.S. 22, 29 (1988); *Hoffman v. Bilaski*, 363 U.S. 335, 343–44 (1960); *Costco*

7   *Wholesale Corp. v. Liberty Mutual Ins. Co.*, 472 F. Supp. 2d 1183, 1189–90 (S.D.Cal. 2007).

8          "Section 1404(a) is intended to place discretion in the district court to adjudicate

9   motions for transfer according to an 'individualized, case-by-case consideration of convenience

10  and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. at 29 (quoting *Van Dusen v. Barrack*,

11  376 U.S. 612, 622 (1964)). "[A] motion to transfer venue for convenience pursuant to 28 U.S.C.

12  § 1404(a) does not concern the issue 'whether and where' an action may be properly litigated.  It

13  relates solely to the question where, among two or more proper forums, the matter should be

14  litigated to best serve the interests of judicial economy and convenience to the parties." *Injen*

15  *Tech. Co. v. Advanced Engine Mgmt.*, 270 F. Supp. 2d 1189, 1193 (S.D. Cal. 2003) (citations

16  omitted).

17         In determining whether transfer is proper, the court must "balance the preference

18  accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum."

19  *Decker Coal*, 805 F.2d at 843 (citations omitted).  According to the Ninth Circuit, relevant

20  factors determining whether transfer is appropriate include: (1) the location where the relevant

21  agreements were negotiated and executed, (2) the state that is most familiar with the governing

22  law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum,

23  (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences

24  in the costs of litigation in the two forums, (7) the availability of compulsory process to compel

25  attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

26  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (citing *Stewart Org. Inc.*,

487 U.S. at 29).  In addition the court must weigh the interests of justice, based on considerations of the relative degree of court congestion and the conservation of judicial resources.  It is a defendant's burden to show that transfer is appropriate.  *Decker Coal Co.*, 805 F.2d at 843; *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir.1980); *Safarian v. Maserati N. Am., Inc.*, 559 F. Supp. 2d 1068, 1071 (N.D. Cal. 2008) ("Once the court determines that venue is proper, the movant must present strong grounds for transferring the action . . . .").

A.  Venue in the Transferee and Transferor Courts

For cases based on federal question jurisdiction, venue is governed by 28 U.S.C. §1391(b), which provides that such an action may be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. When the state has more than one judicial district, a corporation resides in "any judicial district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d); *see Salu, Inc. v. Original Skin Store*, No. CIV. S-08-1035 FCD/KJM, 2008 WL 3863434, at *8 (E.D. Cal. Aug. 13, 2008).

Neither party disputes that venue is proper here, because the property is located and the events at the center of the case occurred in this district.  Defendants concede for purposes of this motion that they are subject to personal jurisdiction in California and plaintiffs do not contest that therefore venue would be proper in the Central District.

B.  Convenience Factors

i.  Location of Relevant Agreements

The deeds of trust and purchase agreements in this case concern land in Yuba County, in this district.  In addition, plaintiffs allege violations of the CC&RS for both

/////

developments, documents recorded in Yuba County.  FAC ¶¶ 108-111; ECF No. 22, Exs. 53 & 54.  This factor favors venue in this district.

ii.  Governing Law

As both the Central and Eastern Districts are familiar with California law, this factor is neutral.

iii. Plaintiffs' Choice of Forum

The court attaches a "strong presumption in favor of plaintiff's choice of forum," *Piper Aircraft v. Reyno*, 454 U.S. 235, 255 (1981), "particularly where the 'operative facts' of a case have a 'material connection with the chosen forum.'" *Mussetter Distrib., Inc. v. DBI Beverage Inc*., NO. CIV. 09-1442WBS EFB, 2009 WL 1992356, at *6 (E.D. Cal. Jul. 8, 2009) (quoting *DeFazio v. Hollister Emp. Share Ownership Trust*, 406 F. Supp. 2d 1085, 1089 (E.D. Cal. 2005)).  Relying on *Wireless Consumers Alliance v. T-Mobile USA, Inc*., No. C 03-3711 MHP, 2003 WL 22387598 (N.D. Cal. 2003), defendants argue that this presumption evaporates because plaintiffs have engaged in forum shopping, hoping to avoid the same result as the *Stephens* plaintiffs experienced.

In *Wireless Consumers*, the court observed that the plaintiff's choice of forum is entitled to less weight when the plaintiff is acting in a representative capacity, as in that case.  It did consider forum shopping in considering the interests of justice, noting that "the transfer statute has a built-in mechanism to remedy the evils of forum shopping by giving little or no weight to the plaintiff's choice of forum away from home and without ties to the controversy." *Id*., at *5.  The complaint in this case is not brought on behalf of a class, and raises claims that arose in this district, which is also plaintiffs' home district.  As defendants have not shown plaintiffs have engaged in forum shopping, plaintiffs' choice of forum here counsels against transfer.

/////

/////

7

1          iv.  Parties' Contacts with the Forum

2          Plaintiffs all own houses in Plumas Lake, a town in Yuba County, in this district.

3    FAC ¶ 1.  Defendant Lennar Corporation is incorporated in Delaware, while defendants Lennar

4    Renaissance, Lennar Sales and UAM are incorporated in California; all the defendants have their

5    principal place of business in Florida.  FAC ¶¶ 4-7.  Although the First Amended Complaint

6    suggests that defendants have severed their ties with this district, defendants have presented no

7    evidence concerning their business or lack thereof in the forum.  As plaintiffs have substantial

8    contacts with the forum and defendants have not shown that their contacts with the Central

9    District are any greater than with this district, the court finds that this factor does not favor

10   transfer.

11          v.  Contacts With the Forum Relating to Plaintiffs' Claims

12          As plaintiffs suggest, it was defendants' decision to develop, build, market, sell

13   and finance houses in this district that gave rise to this litigation.  As plaintiffs' claims have their

14   genesis in actions defendants undertook in this district, this factor also does not favor transfer.

15          vi.  Convenience of the Witnesses; Availability of Compulsory Process

16          To demonstrate inconvenience to witnesses, the moving party should produce

17   information regarding the identity and location of the witnesses, the content of their testimony,

18   and why such testimony is relevant to the action.  *Steelcase, Inc. v. Haworth*, 41 U.S.P.Q.2d

19   1468, 1470 (C.D. Cal. 1996); *Florens Container v. Cho Yang Shipping,* 245 F. Supp. 2d 1086,

20   1092-93 (N.D. Cal. 2002).  Defendants have not presented any evidence, but argue that because

21   third-party witnesses may have to travel for this case and the *Stephens* litigation, a transfer would

22   ensure they would not have to travel to two districts to provide the same testimony.  With the

23   dismissal of *Stephens*, however, defendants' reliance on this factor has evaporated.  If there are

24   out-of-state third party witnesses, they will have to travel to California; defendants have not

25   shown it will be easier for them to travel to Los Angeles than to Sacramento.  *See In re Ferrero*

26   /////

1  *Litig.*, 768 F. Supp. 2d 1074, 1080 (S.D. Cal. 2011) (rejecting conclusory claims about location

2  and difficulties of third party witnesses).

3        Under Rule 45(b)(2) of the Federal Rules of Civil Procedure, a subpoena is valid

4  only if it is issued to someone within the court's subpoena power, which extends throughout the

5  district and to locations within one hundred miles of the place of trial.  As noted, defendants

6  have not identified potential witnesses and so have not suggested the difficulties, if any with

7  compulsory process.  Plaintiffs assert, on the other hand, that all the witnesses, including

8  defendants, are in Yuba County.

9        Defendants have not borne their burden of showing that this factor favors transfer.

10             vii.  Costs of Litigation

11        Although defendants have presented no evidence on this subject, it is reasonable

12  to infer that the costs of litigation for corporations doing business in Florida may be roughly the

13  same in either the Central or Eastern Districts.  The costs of litigation for plaintiffs, who live in

14  this district and who have hired counsel based in this district, would be higher in the Central

15  District.  This factor does not favor transfer.

16             viii.  Ease of Access to Sources of Proof

17        Defendants argue that most of the relevant evidence is documentary and that

18  transporting documents is not burdensome.  The court agrees that transporting documents is not

19  likely to be burdensome, so this factor is neutral.  *See Van Slyke v. Capital One Bank*, 503 F.

20  Supp. 2d 1353, 1362 (N.D. Cal. 2007).

21        The convenience factors do not support defendants' request: defendants have not

22  overcome the deference due to plaintiffs' choice of forum, in light of the fact that the dispute

23  arose in this district, which is also plaintiffs' residence.

24        C.  Interests of Justice

25        Defendants argue this factor is the "paramount consideration" in this transfer

26  determination because transfer will further judicial economy, minimize the potential for

1 inconsistent verdicts, and thwart plaintiffs' attempt to forum shop.  Defendants rely chiefly on

2 *Wireless Consumers Alliance*, *supra*, to argue that the transfer to the Central District, where

3 Judge Phillips has already considered the issues raised in this litigation, mandates transfer.

4       Plaintiffs assert defendants are engaging in forum-shopping, hoping to secure a

5 transfer to a judge who agreed with defendants in the *Stephens* litigation.  They also argue that

6 with the *Stephens* dismissal, there can be no consolidation, which militates against transfer.

7       No controlling authority requires this court to make the interests of justice

8 paramount in its section 1404(a) analysis. As noted above, the question whether to transfer an

9 action must be determined on an 'individualized, case-by-case consideration of convenience and

10 fairness.'"  *Stewart Org., Inc.*, 487 U.S. at 29.  In this case, to determine whether the interests of

11 justice support the transfer, the court considers docket congestion and conservation of judicial

12 resources.

13       i.  Docket Congestion

14       As defendants observe, although the Central and Eastern Districts both have

15 heavy caseloads, the Eastern District has one of the highest weighted case loads per judge in the

16 nation.  *See Parker v. FedEx Nat., Inc.*, No. 1:10–cv-1357–LJO–MJS, 2010 WL 5113809, at *4

17 (E.D. Cal. Dec. 9, 2010).  This factor marginally favors transfer.

18       ii.  Conservation of Judicial Resources

19       "[J]udicial resources are conserved when an action is adjudicated by a court that

20 has already 'committed judicial resources to the contested issues and is familiar with the facts of

21 the case.'" *Kurtz v. Intelius*, No. 2:11-CV-01009 JAM JFM, 2011 WL 4048645, at *2 (E.D. Cal.

22 Sep. 9, 2011) (quoting *Rainin Instrument, LLC v. Gibson, Inc.*, No. C 05-04030 JSW, 2006 WL

23 708660, at *4 (N.D. Cal. Mar. 16, 2006)).  This factor is not as weighty, however, when the

24 resolution of the instant case will require the consideration of issues not previously raised and

25 decided.  *Lens.Com, Inc. v. 1-800 Contacts, Inc.* No. 2:11-cv-00918 GMN-RJJ, 2012 WL

26 1155470, at *3 (D. Nev. Apr. 4, 2012).

The instant complaint does borrow some language and causes of action from the *Stephens* complaint, and Judge Phillips has familiarized herself with the fraud-based, false advertising and unfair competition claims common to both cases.  *See* ECF No. 22, Ex. 52 (order dismissing *Stephens* litigation and consolidated cases).  Nevertheless, the instant case incorporates other causes of action based on the Interstate Land Sales Act, RICO and violations of the CC&RS, which Judge Phillips did not consider over the course of the *Stephens* litigation.  Moreover, as the *Stephens* case has now been dismissed, there is no possibility of consolidation.  *See Lens.Com v. 1-800 Contacts*, 2012 WL 1155470, at *3 (recognizing that the feasibility of consolidation is a significant factor).  The presence of additional claims in this case and the impossibility of consolidation on the one hand and the Central District's familiarity with some of the central issues on the other renders this factor neutral on transfer.

Moreover, this case is not as similar to *Wireless Consumers* as defendants suggest.  In that case, the same lawyers brought an action against T-Mobile on behalf of two T-Mobile consumers in the Central District; and after the judge in that case granted T-Mobile's motion to compel arbitration, the same lawyers brought a class action against T-Mobile in the Northern District, raising the same claims.  T-Mobile sought to transfer the action in the Northern District to the Central District.  The Northern District agreed with T-Mobile, noting that the choice of forum in its litigation was not entitled to significant weight because plaintiffs were suing in a representative capacity, observing the congruence of the claims in both cases, and recognizing that the Northern District action, brought by the same lawyers as the Central District action, was almost certainly an instance of forum-shopping.  *Wireless Consumers Alliance v. T-Mobile USA, Inc*., 2008 WL 22387598, at *4-5.

Here, despite some similarity between the complaints, the instant case was filed by different lawyers and includes additional causes of action not a part of the Central District proceedings.  In addition, as this case was not filed by plaintiffs in a representative capacity, their choice of their own place of residence for their forum does not suggest forum shopping.

1    The interests of justice favor transfer only slightly, and this court's congestion

2    does not outweigh the convenience factors, which favor retaining the case.  The motion for a

3    transfer of venue is denied.

4    III.  MOTION TO DISMISS

5    Defendants argue that many of plaintiffs' claims are barred by the statute of

6    limitations; that the fraud claims do not meet the heightened pleading standard for such claims

7    and that they fail to state a claim; that the false advertising claims fail because any statements

8    were mere puffery.

9    A.  Standards for a Motion to Dismiss

10    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

11    dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

12    dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

13    under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

14    1990).  A motion to dismiss under this rule may also challenge the sufficiency of fraud

15    allegations under the more particularlized standard of Rule 9(b) of the Federal Rules of Civil

16    Procedure.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

17    Although a complaint need contain only "a short and plain statement of the claim

18    showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

19    to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

20    claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

21    (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include

22    something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or

23    "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.*

24    (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to

25    dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to

26    draw on its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses

on the interplay between the factual allegations of the complaint and the dispositive issues of law

in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint

in the light most favorable to the plaintiff and accept as true the factual allegations of the

complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986)

(quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject

to judicial notice" or to material attached to or incorporated by reference into the complaint.

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's

consideration of documents attached to a complaint or incorporated by reference or matter of

judicial notice will not convert a motion to dismiss into a motion for summary judgment.

*United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*,

51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d

977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

B.  Judicial Notice

Both parties have asked the court to take judicial notice of documents outside the

pleadings.  Plaintiffs have submitted satellite images of the neighborhoods in question and an

article and photographs of the area, which appeared in *The Sacramento Bee*.  Defendants have

submitted purchase agreements, deeds of trust and other documents relating to the purchase of

the houses at issue as well as the CC&RS for the two developments.

Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice

of an adjudicative fact which "must be one not subject to reasonable dispute in that it is either

(1) generally known . . . (2) or capable of accurate and ready determination by resort to sources

whose accuracy cannot reasonably be questioned."  When appropriate, a court may take judicial

notice of documents without converting a motion to dismiss into a motion for summary

1    judgment.  *MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  It is the

2    proponent's burden to show that the facts contained in the documents are proper subjects of

3    judicial notice.  *Hurd v. Garcia*, 454 F. Supp. 2d 1032, 1054-55 (S.D. Cal. 2006).

4            "A district court ruling on a motion to dismiss may consider a document the

5    authenticity of which is not contested, and upon which the plaintiff's complaint necessarily

6    relies."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other

7    grounds as recognized in *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir.

8    2006).  The Ninth Circuit has explained that such reliance is permissible when "plaintiff's claim

9    depends on the contents of a document" that is not attached to the complaint.  *Knievel v. ESPN*,

10   393 F.3d 1068, 1076 (9th Cir. 2005).

11           Only the CC&RS submitted by defendants satisfy this standard.  The deeds of

12   trust and purchase agreements are not "central" to the complaint, even though their authenticity

13   does not appear to be questioned.  Moreover, although judicial notice of satellite images may be

14   acceptable for determining locations, plaintiffs are offering the images as proof of matters stated

15   in their complaint, an inappropriate use in connection with a motion to dismiss.  *United States v.*

16   *Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012); *Lee v. City of Los Angeles*, 250 F.3d 668,

17   688 (9th Cir. 2001).

18           C.  Fraud-Based Claims

19           Defendants argue that plaintiffs' first through fifth causes of action all stem from

20   defendants' alleged fraudulent representations and omissions, yet all suffer from a lack of

21   specificity in the pleading, cannot incorporate justifiable reliance because any alleged promises

22   conflict with the terms of the contracts, and do not establish any actionable misrepresentation.

23   They also argue that the claims generally are barred by the statute of limitations.

24           i.  Adequacy of the Pleading

25           In addition to the pleading requirements of Rule 8, allegations of fraud must meet

26   heightened pleading standards.  Under Rule 9(b), a plaintiff who alleges fraud "must state with

14

particularity the circumstances constituting the fraud," but may "aver[] generally" the state of

mind animating the fraud.  The pleading must "'be specific enough to give defendants notice of

the particular misconduct . . . so that they can defend against the charge and not just deny that

they have done anything wrong.'"  *Sanford v. Memberworks, Inc*., 625 F.3d 550, 558 (9th Cir.

2010) (quoting *Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009)); *Neubronner v.

Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993) ("A pleading is sufficient under Rule 9(b) if it

identifies the circumstances constituting fraud so that the defendant can prepare an adequate

answer from the allegations." (internal quotation marks, citation, omitted)); *Odom v. Microsoft

Corp*., 486 F.3d 541, 553 (9th Cir. 2007) (recognizing that "plaintiffs may aver scienter

generally, just as the rule states–that is, simply by saying that scienter existed" (internal

quotation marks and citation omitted)).  To avoid dismissal, the complaint must describe the

time, place, and specific content of the false representations and identify the parties to the

misrepresentations.  *Kearns*, 567 F.3d at 1124.  When fraud is the basis of a claim under

California's false advertising or unfair competition laws or under the ILSA, the pleading

requirements of Rule 9(b) govern.  *In re Sony Grand Wega KDF-E A10/20 Series Rear

Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1093 (S.D. Cal. 2010) (FAL); *Rogers

v. Wesco Prop*., No. CV 09–08149–PCT–MHM, 2010 WL 3081352, at *5 (D.Ariz. Aug. 4,

2010) (ILSA); *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1297 (S.D.Cal.

2011) (UCL); *Sanford*, 625 F.3d at 557 (RICO), when underlying predicate acts are fraud based).

        Plaintiffs have alleged that in its advertising and through the representations of its

sales representatives, among other things, defendants assured plaintiffs that they would build a

fully developed community, including parks, recreation facilities and retail outlets, FAC ¶ 57;

that they would build all the houses within the phase of homes being sold and would build on all

the lots ready for construction, FAC ¶ 60; that the neighborhood would be stable because they

were selling only to owners who were financially capable of owning the homes and would

/////

1  occupy them, whereas in fact they were selling to investors and to unqualified buyers, FAC

2  ¶¶ 31-33, 34.

3          In *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), the Court of Appeals

4  found Rule 9(b)'s standard met when the plaintiffs "alleged specific problems which they allege

5  undermined defendants' optimistic claims, rather than 'stat[ing] simply that defendants' public

6  statements were false, without explaining *how* they were false." (Emphasis in original.) *See also*

7  *In re Glenfed, Inc. Securities Litig.*, 42 F.3d 1541, 1551 (9th Cir. 1994) (allegations of specific

8  statements that conflicted with other positions taken by defendants were sufficient).  Plaintiffs'

9  claims are similar to those in *Cooper*: they allege that defendants' sales representatives and their

10 marketing materials assured them that defendants would provide fully developed neighborhoods

11 even though they never intended to do so.  Similarly they allege that defendants said they would

12 not sell to investors, but rather would sell only to those who intended to occupy the homes, when

13 in fact defendants sold many of the properties to investors.  Plaintiffs have adequately described

14 how the statements were false.

15          Nevertheless, plaintiffs have failed to allege with any specificity what statements

16 were contained in the marketing materials and what claims were made orally by the sales

17 representatives or others, or to identify the time period during which the claims were made.

18 Indeed, even though plaintiffs allege generally that defendants initiated their "seamless" scheme

19 to integrate home development, sales and financing and to increase sales in 2004, and allege that

20 plaintiffs purchased their houses between 2006 and 2008, FAC ¶¶ 3, 19-20, 25, they make no

21 attempt to explain when in that two-to-four year time period specific statements were made

22 orally or as part of promotional materials; they do not even allege that the statements remained

23 the same during the entire period.  As such, their allegations are not specific enough to give

24 defendants notice of the specific misconduct against which they must defend.  *See, e.g.,*

25 *Cherrone v. Florsheim Dev.*, No. CIV 2:12-2069 WBS CKD, 2012 WL 6049021, at *4 (E.D.

26 Cal. Dec. 5, 2012) (finding similar claims insufficiently pleaded under Rule 9(b)).

1    ii. Sufficiency

2    In California, a claim of fraud has five elements:  (1) the defendant falsely

3 represented, concealed or failed to disclose a past or existing material fact; (2) the defendant

4 knew the representation was false at the time it was made; (3) in making the representation, the

5 defendant intended to deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on

6 the representation; and (5) the plaintiff suffered resulting damages.  *Lazar v. Superior Court,* 12

7 Cal. 4th 631, 638 (1996); *Ali v. Humana, Inc*., No. 12–cv–00509–AWI–GSA, 2012 WL

8 2376972, at *5 (E.D. Cal. June 22, 2012); *SCC Acquisitions Inc. v. Cent. Pac. Bank*, 207 Cal.

9 App. 4th 859, 864 (2012).  To establish fraud through concealment, plaintiff must show that

10 defendant had a duty to disclose the concealed facts.  *OCM Principal Opportunities Fund v.*

11 *CIBC World Mkts. Corp*., 157 Cal. App. 4th 835, 845 (2007).  "A duty to speak may arise in four

12 ways: it may be directly imposed by statute or other prescriptive law; it may be voluntarily

13 assumed by contractual undertaking; it may arise as an incident of a relationship between the

14 defendant and the plaintiff; and it may arise as a result of other conduct by the defendant that

15 makes it wrongful for him to remain silent."  *SCC Acquisitions Inc. v. Central Pac. Bank*, 207

16 Cal. App. 4th 859, 864 (2012) (internal citation & quotation marks omitted).

17    a.  Reliance

18    Defendants first argue that plaintiffs cannot demonstrate reliance as a matter of

19 law because under the purchase agreements plaintiffs agreed that defendants were not

20 responsible for real estate market fluctuations or the appreciation of the property, that defendants

21 could sell other houses under different terms and take other actions that might affect the value of

22 the property, and that none of defendants' agents had made any representations about the value

23 of the property.  ECF No. 21 at 16-17.  This argument depends, of course, on the documents

24 defendants have submitted as part of their requests for judicial notice, of which the court has not

25 taken notice.

26 /////

1          Even if the court had taken judicial notice of these documents, it would not

2  dismiss on this basis.  Reliance is not an element of a cause of action under the ILSA.  *Kennelly*

3  *v. Bank of Nova Scotia*, 711 F. Supp. 2d 1174, 1186 (S.D. Cal. 2010).  While it may be an

4  element under the UCL and FAL, California courts treat reliance as a factual issue and have said

5  that "a per se rule that an integration/no representations clause establishes, as a matter of law,

6  that a party claiming fraud did not reasonably rely on representations not contained in the

7  contract is inconsistent with California law."  *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App.

8  4th 289, 302 (2005); *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995) ("Except in

9  the rare case where the undisputed facts leave no room for reasonable difference of opinion, the

10  question of whether a plaintiff's reliance is reasonable is a question of fact") (internal quotation

11  and citation omitted); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-27 (2011)

12  (discussing reliance as an element of standing under the UCL and FAL); *see also Duncan v.*

13  *McCaffrey Group, Inc.*, 200 Cal. App. 4th 346 (2011), *overruled on other grounds by*

14  *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal.4th 1169 (2013).

15                b.  Duty to Disclose

16          Defendants next argue that they had no duty to disclose the financial condition of

17  other purchasers in the development.  They rely on *Kaing v. Pultegroup, Inc.*, 464 F. App'x 630,

18  631 (9th Cir. 2011), which upheld the district court's determination that the plaintiff had not

19  sufficiently alleged that the decreased value of her property was traceable to the defendants'

20  concealment of the extent of subprime lending in the development and noted, somewhat

21  cryptically, that "Kaing also admits that she was not qualified to purchase a home from Pulte."

22  Defendants say that plaintiffs' similar concession means that, as in *Kaing*, they cannot plausibly

23  allege defendants failed to disclose sales to other unqualified buyers.  *See* FAC ¶ 53

24  ("Defendants' [*sic*] falsely suggested to the Plaintiffs that they were qualified to purchase").  In

25  other places in the complaint, however, plaintiffs assert the early buyers were required to make

26

1  substantial downpayments.  FAC ¶ 32.  At this stage it is not clear that the single paragraph

2  about plaintiffs' qualifications suggests they were unqualified so as to warrant dismissal.

3          In California, "[a] seller of real property has a common law duty to disclose

4  'where the seller knows of facts materially affecting the value and desirability of the property

5  which are known or accessible only to him and also knows such facts are not known to, or within

6  the reach of the diligent attention and observation of the buyer . . . ."  *Alfaro v. Cmty. Hous.*

7  *Improvement System & Planning Ass'n, Inc.*, 171 Cal. App. 4th 1356, 1382 (2009).  Here

8  plaintiffs allege that defendants failed to reveal the extent of the subprime lending in the

9  neighborhood, which led to depressed property values in the wake of foreclosures and short

10 sales.  The court is not willing to say, on a motion to dismiss, that these allegations are

11 insufficient.  *In re Countrywide Fin. Corp. Mortg. Mktg. and Sales Practices Litig.*, 601 F. Supp.

12 2d 1201, 1218 (S.D. Cal. 2009).

13                    c.  Actionable Misrepresentation

14         Defendants argue that their alleged statements about the nature of the investment

15 and the desirability of the neighborhood were "puffery" and are not actionable.

16         The Ninth Circuit has said "a statement is considered puffery if the claim is

17 extremely unlikely to induce consumer reliance.  Ultimately the difference between a statement

18 of fact and mere puffery relies in the specificity or generality of the claim."  *Newcal Industries,*

19 *Inc. v. IKON Office Solutions*, 513 F. 3d 1038, 1053 (2008).  California courts also say that

20 "[s]tatements concerning the value of property are generally deemed to be expressions of

21 personal opinion and not actionable representations of fact upon which the other party can rely."

22 *Assilzadeh v. California Fed. Bank*, 82 Cal. App. 4th 399, 411-12 (2000); *Neu-Visions Sports,*

23 *Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 309-10 (2000) (stating that a prediction

24 that an appraiser would value the property at $5 million was the expression of an opinion as to a

25 future fact); *see also Gentry v. Harborage Cottages-Stuart, LLLP*, 602 F. Supp. 2d 1239, 1252

26 (S.D. Fla. 2009), *reversed on other grounds*, 654 F.3d 1247 (11th Cir. 2011) (stating that under

1    the ILSA, "mere opinions or exaggerations concerning the qualities of an offering by a seller

2    constitute non-actionable puffery).  However, California courts generally find that when there is

3    "a reasonable doubt as to whether a particular statement is an expression of opinion or the

4    affirmation of a fact, the determination rests with the trier of fact."  *Jolley v. Chase Home*

5    *Finance, LLC.*, 213 Cal. App. 4th 872, 893 (2013) (internal citation and quotation marks

6    omitted).

7            Defendants read the complaint too narrowly, at least as to some of the claims.

8    Although they claim that the alleged promise not to sell to investors is puffery because of the

9    vagueness of the term "investors," plaintiffs identify investors as those buyers who would not

10   live in the houses.  FAC ¶ 30.  This is sufficiently specific.

11           To the extent, however, that plaintiffs rely on the predictions about value, the

12   claim appears to be based on puffery, as it is not sufficiently linked to defendants' alleged

13   promises to complete the neighborhoods, develop desirable infrastructure, and sell only to those

14   with plans to live in the houses and contribute to the quality of the neighborhood as giving value

15   to the houses in the development.  *See F.T.C. v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d

16   1167, 1206 (N.D. Ga. 2008) (stating that when advertiser places otherwise general assertions

17   into a concrete factual setting, the representations are true or false, not puffery), *aff'd*, 356 F.

18   App'x 358 (11th Cir. 2009).  Plaintiffs will be given leave to amend their complaint, if they are

19   able while complying with Federal Rule of Civil Procedure 11.

20           iii.  Statute of Limitations

21           A party may raise a statute of limitations argument in a motion to dismiss if it is

22   apparent from the face of the complaint that the complaint was not timely filed and that plaintiff

23   will be unable to prove facts that will establish the timeliness of the claim.  *Von Saher v. Norton*

24   *Simon Museum*, 592 F.3d 954, 969 (9th Cir. 2010), *cert. denied*, ___ U.S. ___, 131 S.Ct. 3055

25   (2011); *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995).  According

26   to the complaint, plaintiffs purchased the houses between 2006 and 2008.  FAC ¶ 3.

1    The statute of limitations for actions under California Business and Professions

2  Code §§17200 and 17500 is four years.  *CytoSport, Inc. v. Vital Pharm., Inc.*, __ F. Supp. 2d __,

3  2012 WL 3881599, at *7 (E.D. Cal. Sep. 6, 2012); *Cortez v. Purolator Air Filtrations Prod. Co.*,

4  23 Cal. 4th 163, 178 (2000); CAL. CIV. CODE § 17208.  For ILSA fraud claims under 15 U.S.C.

5  § 1703(1)(2)(A)-(c), "no action shall be maintained . . . [¶] more than three years after discovery

6  of the violation or after discovery should have been made by the exercise of reasonable

7  diligence."  15 U.S.C. § 1711(a)(2).

8    The Ninth Circuit has held that claims under the UCL begin to run on the date of

9  the violation and not the date of discovery.  *Karl Storz Endoscopy-Am., Inc. v. Surgical Tech.,*

10  *Inc.*, 285 F.3d 848, 857 (9th Cir. 2002).  Recently, however, the California Supreme Court held

11  that the claims under the UCL are "governed by common law accrual rules," including delayed

12  discovery.  *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1196 (2013).  The Ninth

13  Circuit's interpretation of California law is "'binding in the absence of any subsequent indication

14  from the California courts that our interpretation was incorrect,'" *Jones-Hamilton Co. v. Beazer*

15  *Materials & Servs., Inc.* 973 F.2d 688, 696 n.4 (9th Cir. 1992) (quoting *Owen v. United States*,

16  713 F.2d 1461, 1464 (9th Cir. 1983)); in this case, the *Aryeh* decision is a clear indication that

17  the Ninth Circuit was incorrect in resolving this issue relating to the statute of limitations for

18  UCL claims.

19    In California, a party is deemed to have discovered the fraud when it "'has reason

20  at least to suspect the factual basis for its elements.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.

21  4th 797, 807 (2005) (quoting *Norgart v. The Upjohn Co.*, 21 Cal. 4th 383, 398 (1999)).

22  A party relying on the delayed discovery rule must plead facts showing the time and manner of

23  the discovery and the inability to have made earlier discovery despite reasonable diligence;

24  conclusory allegations are not sufficient.  *E-Fab, Inc., v. Accountants, Inc., Servs.*, 153 Cal. App.

25  4th 1308, 1319 (2007).  Under the federal standard, the limitations period is not triggered by a

26  mere suspicion about the elements of the claim, but a plaintiff must explain how and when he

1   discovered his claim.  *O'Connor v. Boeing N. Am., Inc*., 311 F.3d 1139, 1148, 1157 (9th Cir.

2   2002).  In this case plaintiffs allege generally that they discovered their claims when they tried to

3   secure credit based on their home equity, but do not address why they could not earlier have

4   discovered the basis of their claims.  They will be given leave to amend, if they are able.

5        D.   Rescission

6             Defendants claim that rescission is a remedy, not a separate cause of action.

7   Some cases find that rescission is a form of relief, *see, e.g. Maraldo v. Life Ins. Co. of the Sw*.,

8   No. 11-CV-4972-YGR, 2012 WL 1094462, at * 9 (N.D. Cal. Mar, 30 2012), while others state

9   that "'a cause of action for rescission exists pursuant to a contract for sale of property between

10   private parties . . . .'" *Ribeiro v. Cnty. of El Dorado*, 195 Cal. App. 4th 354, 369-70 (2011)

11   (quoting *Schultz v. Cnty. of Contra Costa*, 157 Cal. App. 3d 242, 247 (1984)).  To the extent that

12   plaintiffs rely on the underlying fraud as a basis for this claim, its viability is linked to the

13   discussion of the fraud causes of action discussed above.  *See* pages 14-20 *supra*.  Any

14   amendments to the fraud claims, which will be allowed, will control the viability of the

15   rescission claim.

16        E.   RICO

17             Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or

18   associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct

19   of such enterprise's affairs through a pattern of racketeering activity."  Although §1962 defines a

20   crime, a plaintiff may seek civil remedies for RICO violations if he has been "injured in his

21   business or property by reason of a violation of section 1962. . . ."  18 U.S.C. § 1964(c).  The

22   elements of a RICO claim are "(1) conduct; (2) of an enterprise; (3) through a pattern (4) of

23   racketeering activities (known as 'predicate acts'); (5) causing injury to the plaintiff's 'business

24   or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).  "Racketeering activity" is

25   defined as any of a set of "generically specified criminal acts as well as the commission of one of

26   a number of listed predicate offenses." *Sosa v. Directv, Inc*., 437 F.3d 923, 939 (9th Cir. 2006).

A "pattern of racketeering activity" requires at least two acts.  18 U.S.C. § 1961(1), (5), (6).

Moreover, "to establish liability under § 1962(c) one must allege and prove the existence of two

distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person'

referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161

(2001).  In *Cedric Kushner*, the Supreme Court held that a corporation's sole owner was

sufficiently distinct from the corporation itself to be a person within the contemplation of the

RICO statutes.

Although the Ninth Circuit has recognized that "for the purposes of a single

action, a corporate defendant cannot be both the RICO person and the RICO enterprise under

section 1962(c)," it has not addressed whether a parent and its subsidiaries may play both roles.

Courts in this circuit have not adopted a uniform position.  *Compare Ice Cream Distrib. of

Evansville, LLC v. Dreyer's Grand Ice Cream, Inc*., No. 09-5815 CW, 2010 WL 3619884 (N.D.

Cal. Sep. 10, 2010) ("[A] § 1962(c) claim could not be based on a RICO enterprise comprised of

a corporation, a wholly-owned subsidiary and an employee of that corporate family if these

entities were also plead as the RICO persons."), *aff'd* 487 F. App'x 362 (9th Cir. Nov. 1, 2012)

*with Watts v. Allstate Indem. Co*, No. CIV. S–08–1877 LKK/GGH, 2009 WL 1905047, at *6

(E.D. Cal. Jul. 1, 2009) (stating that formal distinctiveness is sufficient, whether or not there was

practical separation).  Whatever the rule, the Ninth Circuit requires a party asserting a RICO

cause of action to properly plead distinctness of the person and the enterprise.  *Living Designs,

Inc., v. E.I. Dupont de Nemours and Co*., 431 F.3d 353, 361-62 (9th Cir. 2005).  Plaintiffs have

utterly failed to so plead, but rather have described that the entities "were jointly engaged in an

enterprise" and that "their individual corporate personalities no longer exist."  FAC ¶ 8.  They

also allege that the "businesses have few of the characteristics of a separate company, and

instead have virtually all of the characteristics of a division that simply facilitates the

implementation of the home sales business of Lennar Corporation."  FAC ¶ 21.  Plaintiffs then

list the ways in which Lennar Corporation controls the activities of the other defendants.  FAC

1    ¶¶ 22-24.  This claim is dismissed without leave to amend, as it does not appear plaintiffs can

2    allege distinctiveness in good faith.

3        F.   Other UCL Theories

4            "To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or

5    fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising."

6    *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (internal

7    quotations omitted); *Gardner v. Am. Home Mortg. Servicing, Inc*., 691 F. Supp. 2d 1192, 1201

8    (E.D. Cal. 2010).  Because the statute is phrased in the disjunctive, a practice may be unfair or

9    deceptive even if is not unlawful, or vice versa.  *Lippitt*, 340 F.3d at 1043.

10           An action is unlawful under the UCL and independently actionable if it

11    constitutes a violation of another law, "be it civil or criminal, federal, state, or municipal,

12    statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39

13    (1999); *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  Because the

14    statute borrows violations of other laws, a failure to state a claim under the "borrowed statute"

15    translates to a failure to state a claim under the unlawful prong of the UCL.  As plaintiffs have

16    not adequately pleaded that their ILSA claim is timely, their UCL claim based on unlawfulness

17    is similarly not adequately pleaded.

18           An act is "unfair" under the UCL if it "significantly threatens or harms

19    competition, even if it is not specifically proscribed by another law" or "is tethered to some

20    legislatively declared policy . . . ."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*

21    20 Cal. 4th 163, 180, 186-87 (1999); *Swanson v. EMC Mortg. Corp*., No. CV F 09-1507 LJO

22    DLB, 2009 WL 4884245, at *9 (E.D. Cal. Dec. 9, 2009).   As noted, plaintiffs' claims based on

23    various laws have been dismissed with leave to amend and plaintiffs have not described how the

24    defendants' alleged actions threatened or harmed competition, only that they harmed plaintiffs.

25    This claim is dismissed with leave to amend, if proper amendment is possible.

26    /////

1        G.  Illegal Tying

2                i.  Statute of Limitations

3            A four year statute of limitations governs federal antitrust violations and begins

4    on the date the defendant commits the act that injures another.  *Varner v. Patterson Farms*, 371

5    F.3d 1011, 1019 (8th Cir. 2004); 15 U.S.C. §15(b).  When a plaintiff alleges that an agreement is

6    an illegal tying agreement, he must bring suit within four years after the agreement was

7    executed, as a general rule.  *Bass v. Boston Five Cent Savings Bank,* 478 F. Supp. 741, 747 (D.

8    Mass. 1979).  "A cause of action, however, does not necessarily 'accrue' when the defendant

9    commits the act causing plaintiff's injury but may be tolled until the plaintiff discovers or should

10   have discovered the injury.  For instance, acts of fraudulent concealment by the defendant toll

11   the limitations for so long as the concealment continues."  *In re Scrap Metal Antitrust Litig.*, 527

12   F. 3d 517, 536 (6th Cir. 2008); *Battle v. Liberty Nat' Life Ins. Co*, 493 F. 2d 39, 52 (5th Cir.

13   1974).

14           California's Cartwright Act also is governed by a four year statute of limitations.

15   *Stanislaus Food Prod. Co. v. USS-POSCO Indus*., CV F 09-0560 LJO SMS, 2010 WL 3521979,

16   at *13 (E.D. Cal. Sep 3, 2010); Cᴀʟ. Bᴜs. & Pʀᴏꜰ. Cᴏᴅᴇ § 16720, *et seq.*  This period is also

17   subject to tolling.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07–1827 SI, C 12–3802

18   SI, 2013 WL 1164897, at *4 (N.D. Cal. Mar. 20, 2013).  As noted above, plaintiffs do not

19   sufficiently support their claim of delayed discovery.  *See* pages 20-22 *supra*.  They will be

20   given leave to amend this claim, if they are able.

21               ii.  Sufficiency of the Pleading

22           Under federal law, "[a] tying arrangement is 'an agreement by a party to sell one

23   product but only on the condition that the buyer also purchases a different (or tied) product, or at

24   least agrees that he will not purchase that product from any other supplier.'" *Eastman Kodak Co.

25   v. Image Technical Servs., Inc*. 504 U.S. 451, 461 (1992) (quoting *Northern Pacific R. Co. v.

26   United States*, 356 U.S. 1, 5-6 (1958)).  "A tying arrangement will constitute a per se violation of

the Sherman Act if the plaintiff proves that 'the defendant tied together two distinct products or services; (2) that the defendant possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied product market.'" *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 n.7 (9th Cir.) (quoting *Cascade Health Solutions v. Peace-Health,* 515 F.3d 883, 913 (9th Cir. 2008)), *cert. denied*, 133 S.Ct 573 (2012).

Similarly, under the Cartwright Act, "[a] tie-in (or tying arrangement) is a requirement that a buyer purchase one product or service as a condition of the purchase of another." *Classen v. Weller*, 145 Cal. App. 3d 27, 36 (1983). "An anti-trust complaint predicated on an illegal per se tying arrangement must allege that: (1) a tying agreement, arrangement, or condition existed whereby the sale of the tying product was linked to the sale of the tied product or service; (2) the party had sufficient economic power in the tying market to coerce the purchase of the tied product; (3) a substantial amount of sale was effected in the tied product; and (4) the complaining party sustained pecuniary loss as a consequence of the unlawful act." *Id*. at 37-38. California courts look to cases interpreting the Sherman Act for guidance in interpreting the Cartwright Act.

Defendants first argue that plaintiffs' purchase agreements, submitted as part of their request for judicial notice, contain an advisement that the buyers were not obligated to accept a loan from UAM and that the trust deeds show that four plaintiffs secured financing from other lenders. As noted above, however, the court has declined to take judicial notice of these documents. Plaintiffs do admit, however, there were a "few exceptions" to defendants' "requirement to obtain financing through UAM or through other mortgage companies with which the Defendants had similar tying arrangements . . . ." FAC ¶ 103. Although arguing that these exceptions show there was no coercion, defendants have not cited a case suggesting that coercion is not properly pleaded if a few consumers were able to resist the coercive force.

/////

1    Even so, plaintiffs' pleading is not sufficient.  As the Ninth Circuit has

2 recognized, "'mere sales pressure' does not constitute evidence of coercion."  *Paladin Assoc.,*

3 *Inc. v. Montana Power Co.*, 328 F.3d 1145, 1160 (9th Cir. 2003).  Plaintiffs say that "[a]s a

4 required condition of sale . . . the Defendants purposefully steered – and most often– mandated

5 that the home buyers utilize the financing to be provided by UAM" and that "each sale was

6 wrongfully conditioned– either by mandate or empty incentives–to the requirement to obtain

7 financing from UAM . . . ."  FAC ¶¶ 101, 103.  However, plaintiffs have not described how

8 defendants "steered" or "mandated" them to obtain financing through UAM, which provides

9 insufficient factual support for their claims.  *Cherrone v. Florsheim Development*, 2012 WL

10 6049021, at *5; *Cissne v. CHS, Inc.*, Nos. CV-06-100-LRS, 05-00509-JAR11, 05-80212-JAR,

11 2007 WL 1747162, at *2 (E.D. Wash. Jun. 15, 2007) (rejecting a tying claim when plaintiff was

12 aware he could obtain financing elsewhere but did not attempt to do so); *Nicolosi Distributing,*

13 *Inc. v. BMW N. Am.*, LLC, No. C 10–3256 SI, 2011 WL 479993, at *3 (N.D. Cal. Feb. 7, 2011)

14 (rejecting Cartwright Act claim as insufficiently pleaded when plaintiffs said only that

15 defendants forced them to use BMW paint).

16    In addition, plaintiffs have failed to allege adequately economic power in the

17 relevant market, which omission by itself "is sufficient ground to dismiss an antitrust

18 complaint."  *Rick-Mik Enter., Inc. v. Equilon Enter., LLC*, 532 F.3d 963, 972 (9th Cir. 2008).

19 Although plaintiffs allege generally that "Defendants constitute one of the largest home building

20 operations in the nation," it is not clear that they are identifying the entire nation as the relevant

21 market.  If they are relying on Yuba County or some other area as the relevant market, they have

22 not specifically described it nor identified defendants' power in that market.  *See Datel Holdings*

23 *Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 995 (N.D. Cal. 2010).  They will be given leave to

24 amended this claim, if they are able.

25 /////

26 /////

H.  Violation of the CC&RS

Defendants allege that plaintiffs' claim based on a violation of the CC&RS is a claim for breach of contract and that to allege such a claim, plaintiffs must attach the contract or quote verbatim the relevant portions of the contract.  Even assuming that this claim is necessarily a breach of contract claim, federal procedural rules do not require that the contract at issue be attached to the complaint, contrary to defendant's claim that the confusion over the attachments dooms plaintiffs' claim.  *Downtown Plaza LLC v. Nail Trix, Inc.*, No. 2:08-cv-2001-GEB-KJM, 2008 WL 5099656, at *1 (E.D. Cal. Dec. 1, 2008); *Kassa v. BP West Coast Prod., LLC*, No. C-08-02725 RMW, 2008 WL 3494677, at *4 (N.D. Cal. Aug. 12, 2008) (stating that federal procedure requires only that the defendant have notice of the contract alleged to have been breached); *but see Jackson v. Farmers Ins. Exchange*, No. 2:12-CV-01020 WBS GGH, 2012 WL 5337076, at *4 (E.D. Cal. Oct. 26, 2012) (stating that a plaintiff must plead a contract by its terms or must attach a copy); *Cutujian v. Benedict Hills Estates Ass'n*, 41 Cal. App. 4th 1379, 1384 (1996).  As defendants do not challenge this claim on other grounds, the motion to dismiss it is denied.

IT IS THEREFORE ORDERED that:

1.  Defendants' motion to transfer venue is denied;

2.  Defendants' motion to dismiss is granted in part and denied in part as set forth above; and

3.  Plaintiffs' second amended complaint is due within twenty one days of the date of this order.

DATED:  March 30, 2013.

_____
UNITED STATES DISTRICT JUDGE